NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

RENALDO CHAMPAGNE a/k/a Renaldo        )
Sampson, DOC #495786,                  )
                                       )
            Appellant,                 )
                                       )
v.                                     )       Case No. 2D17-3072
                                       )
STATE OF FLORIDA,                      )
                                       )
            Appellee.                  )
_____)

Opinion filed April 24, 2019.

Appeal pursuant to Fla. R. App. P.
9.141(b)(2) from the Circuit Court for
Hillsborough County; Mark Kiser, Judge.

Renaldo Champagne, pro se.

Ashley Moody, Attorney General,
Tallahassee, and Susan D. Dunlevy,
Assistant Attorney General, Tampa; and
Helene S. Parnes, Senior Assistant Attorney
General, Tampa (substituted as counsel of
record), for Appellee.

BLACK, Judge.

        Renaldo Champagne challenges the denial of his postconviction motion

filed pursuant to Florida Rule of Criminal Procedure 3.800(a).  Champagne does not

challenge the life sentence imposed on his conviction for robbery with a firearm; he

contends only that the twenty-year sentence imposed on his conviction for false imprisonment, a third-degree felony, is illegal. We conclude that Champagne's twenty-year sentence is legal, and we certify a question of great public importance.

Champagne was sentenced under the Criminal Punishment Code, chapter 921, Florida Statutes (2005) (CPC). Section 921.0024(2) states that when "the lowest permissible sentence under the [CPC] exceeds the statutory maximum sentence as provided in s. 775.082, the sentence required by the [CPC] must be imposed." Champagne asserts that because the lowest permissible sentence under the CPC (LPS) does not exceed the statutory maximum for his primary offense or the collective statutory maximum of his primary and additional offense, his sentences must not exceed the respective statutory maximum for each offense. However, Champagne's interpretation is not supported by the statutory language, and the plain language of the statute must control. We conclude that the LPS is an individual minimum sentence which must be imposed when the LPS exceeds the statutory maximum sentence for each offense and therefore that Champagne's sentence is legal.

I. Background

Champagne was convicted of robbery with a firearm, a first-degree felony punishable by life in prison, see § 812.13(2)(a), Fla. Stat. (2005), and false imprisonment, a third-degree felony, see § 787.02(2), Fla. Stat. (2005). A CPC scoresheet was prepared for sentencing.[1] The robbery count was scored as the

_____

[1] A single scoresheet is prepared "for each defendant to determine the permissible range for the sentence that the court may impose," and the scoresheet "must cover all of the defendant's offenses pending before the court for sentencing." § 921.0024(3); see also Fla. R. Crim. P. 3.704(d)(2). An exception to the single scoresheet requirement applies where some of the offenses at sentencing are subject

- 2 -

primary offense on Champagne's scoresheet, and the false imprisonment count was scored as an additional offense. Champagne's total sentence points were 348.2, and the LPS was 240.15 months in prison. The court found that Champagne qualified as a three-time violent felony offender and imposed a life sentence on the robbery count.[2] The court then sentenced Champagne to twenty years (240 months) in prison on the false imprisonment count.[3]

In his postconviction motion, Champagne argued that his twenty-year sentence is illegal based on his reading of section 921.0024(2) and Butler v. State, 838 So. 2d 554 (Fla. 2003). He asserted that because the 240.15-month LPS does not exceed the statutory maximum of life for the primary offense, his sentence on the

---

to enhancement. See Fla. R. Crim. P. 3.704(d)(1); State v. Collins, 985 So. 2d 985, 991 (Fla. 2008) ("Habitual offender sentencing is now separate from both the sentencing guidelines and sentencing under the [CPC].").

[2]Although he was noticed as a habitual felony offender, habitual violent felony offender, and violent career criminal (VCC), and the court found that he qualified for each designation, the court only sentenced Champagne as a three-time violent felony offender and a VCC. The propriety of listing the robbery as the primary offense, given those enhancements, has not been raised. See § 775.084(4)(h), Fla. Stat. (2005) ("A sentence imposed under this section is not subject to s. 921.002."); see also Fla. R. Crim. P. 3.704(b) ("Existing case law construing the application of sentencing guidelines will continue as precedent unless in conflict with the provisions of this rule or the 1998 [CPC]."); Olsen v. State, 791 So. 2d 558, 560 (Fla. 2d DCA 2001) (restating that it is improper to include habitualized offenses on a scoresheet); Sheffield v. State, 214 So. 3d 763, 764 (Fla. 1st DCA 2017) ("Florida appellate courts repeatedly have held that when the trial court imposes a habitual offender sentence for an offense, the trial court removes that offense from sentencing under the guidelines and cannot include that offense either as a primary or additional offense on the guidelines scoresheet."). However, we note that "[s]ection 921.0021 does not differentiate original sentencing proceedings . . . and resentencing proceedings." Sanders v. State, 35 So. 3d 864, 869 (Fla. 2010).

[3]Neither the State, the sentencing court, nor the postconviction court addressed the difference between the LPS of 240.15 months and the sentence of 240 months.

additional offense, a third-degree felony, cannot exceed the statutory maximum of five years. Champagne's interpretation of the law would mean that in instances like his, where the LPS does not exceed the statutory maximum for the primary offense, the sentences for any additional offenses must not exceed the individual statutory maximums for those offenses. Essentially, Champagne contends that the LPS is a collective minimum sentence.

The postconviction court denied Champagne's motion, finding that section 921.0024 does not require the LPS to be imposed "only if it exceeds the statutory maximum for the primarily scored offense. Rather, the [c]ourt must look at each individual offense and compare the statutory maximum for that specific offense to the [LPS] pursuant to the scoresheet." Thus, it concluded that because the 240.15-month LPS exceeded the five-year statutory maximum for false imprisonment, Champagne's twenty-year sentence is legal. We agree.

II.     Standard of Review

Where a sentencing error involves "a violation of the sentencing maximums provided by the [l]egislature," it may be corrected by a rule 3.800(a) motion. Martinez v. State, 211 So. 3d 989, 991-92 (Fla. 2017) (quoting Wright v. State, 911 So. 2d 81, 84 (Fla. 2005)). "[A] sentence that patently fails to comport with statutory or constitutional limitations is by definition 'illegal.' " Id. at 991 (quoting Plott v. State, 148 So. 3d 90, 94 (Fla. 2014)). Champagne's twenty-year sentence is clearly in excess of the maximum provided by section 775.082, Florida Statutes (2005); therefore, we must examine the applicable language of the CPC and existing precedent to determine if Champagne's sentence is also at odds with the CPC. See Nat'l Deaf Acad., LLC v.

- 4 -

Townes, 242 So. 3d 303, 309 (Fla. 2018) ("[W]e begin with the statutory definition . . . enacted by the [l]egislature and interpreted by this Court and the district courts of appeal. We then examine how that statutory definition has been applied by courts . . . ."). "Questions of statutory interpretation are reviewed de novo," and "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, . . . the statute must be given its plain and obvious meaning." Eustache v. State, 248 So. 3d 1097, 1100 (Fla. 2018) (quoting Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984)).

III.     Applicable law

A.     Statutory language

The CPC provides that "[t]he primary purpose of sentencing is to punish the offender." § 921.002(1)(b). It also provides that "[t]he penalty imposed is commensurate with the severity of the primary offense and the circumstances surrounding the primary offense" and that "[t]he severity of the sentence increases with the length and nature of the offender's prior record." § 921.002(1)(c), (d). "Primary offense" is defined as the "the offense at conviction pending before the court for sentencing for which the total sentence points recommend a sanction that is as severe as, or more severe than, the sanction recommended for any other offense committed by the offender and pending before the court at sentencing." § 921.0021(4). "Prior record" is defined as "a conviction for a crime committed . . . prior to the time of the primary offense." § 921.0021(5). Additional offenses, those "for which an offender is convicted and which [are] pending before the court for sentencing at the time of the primary offense," § 921.0021(1), are scored and included in the total sentence points

calculation, which is then used solely to determine the offender's LPS, see §
921.0024(1)(a), (2).  Additional offenses are also referenced as part of the CPC's
sentencing range: "The permissible range for sentencing shall be the [LPS] up to and
including the statutory maximum, as defined in s. 775.082, for the primary offense and
any additional offenses before the court for sentencing."  § 921.0024(2).  The LPS "is
assumed to be the lowest appropriate sentence for the offender being sentenced," §
921.00265(1), and it "is the minimum sentence that may be imposed by the trial court,
absent a valid reason for departure," § 921.0024(2).[4]

However, unlike the CPC's sentencing range which references "the
statutory maximum . . . for the primary offense and any additional offenses," the CPC's
requirement that the LPS be imposed when the LPS "exceeds the statutory maximum
sentence" does not reference primary or additional offenses, statutory maximums, or
multiple sentences: "If the [LPS] exceeds the statutory maximum sentence as provided
in s. 775.082, the sentence required by the [CPC] must be imposed."  § 921.0024(2); cf.
id. ("The [LPS] is any nonstate prison sanction in which the total sentence points equals
or is less than 44 points, unless the court determines within its discretion that a prison
sentence, which may be up to the statutory maximums for the offenses committed, is
appropriate." (emphasis added)).  But see Fla. R. Crim. P. 3.992(a) ("The maximum
sentence is up to the statutory maximum for the primary and any additional offenses as
provided in s. 775.082, F.S., unless the [LPS] exceeds the statutory maximum."
(emphasis added)).  The CPC also provides that the trial court "may impose a sentence

_____

[4]A departure sentence is one "that decreases an offender's sentence
below the [LPS]."  § 921.00265(2).

- 6 -

up to and including the statutory maximum for any offense," § 921.002(1)(g), and expressly allows for concurrent or consecutive sentencing, § 921.0024(2).

The LPS is a minimum sentence; the question is whether it is an individual minimum sentence, required to be imposed on each offense at sentencing for which it exceeds that offense's statutory maximum, or a collective minimum sentence. If the LPS is an individual minimum sentence, our analysis is complete and the LPS was legally imposed. But as is apparent, the language of section 921.0024(2) is not consistent; both singular and plural terms are used, and the terms statutory maximum and statutory maximum sentence are used without explanation or definition. Although the supreme court has interpreted section 921.0024(2), it has not addressed the issue presented to us. And as will be seen, courts have not consistently applied the language.

B. Precedent

1. Butler v. State, 838 So. 2d 554 (Fla. 2003)

In Butler, the supreme court determined that sections 921.002(1)(g) and 921.0024(2), respectively providing that a court may sentence an offender up to the statutory maximum for any offense and that a court must impose the LPS where it exceeds the statutory maximum sentence, are not in conflict and can be harmonized. 838 So. 2d at 556. In so concluding, the supreme court held that "when section 921.0024(2) applies so that the statutory maximum sentence as provided in section 775.082, Florida Statutes (2002), is exceeded by the [LPS], the [LPS] becomes the maximum sentence which the trial judge can impose." Id.

Butler was sentenced to the LPS, 75.6 months in prison, on his possession of cocaine conviction. He subsequently filed a postconviction motion alleging that the 75.6-month sentence was illegal because it exceeded the five-year statutory maximum sentence for third-degree felonies. He did not challenge his sentences on the possession of cannabis, driving with a suspended license, resisting arrest without violence, and driving under the influence convictions. The opinion is silent as to the classifications of those offenses; however, they all appear to be misdemeanors. See id. at 555. Therefore, the possession of cocaine conviction necessarily would have been the primary offense on Butler's CPC scoresheet.[5]

Given the facts in Butler, the court did not determine whether the LPS becomes the maximum sentence a court can impose—in fact, the sentence which must be imposed in the absence of a basis for downward departure—for each offense at sentencing for which the LPS exceeds that individual offense's statutory maximum. It had no reason to discuss whether the LPS is an individual or collective minimum or how to apply the LPS to multiple felonies at sentencing.

2. Moore v. State, 882 So. 2d 977 (Fla. 2004)

In Moore, the supreme court addressed whether Tripp[6] credit must be awarded to probation violators sentenced under the CPC. In holding that Tripp does not apply to CPC sentences, the court addressed conceptual and procedural differences

_____

[5]The CPC expressly states that it applies "to all felony offenses, except capital felonies, committed on or after October 1, 1998," § 921.002, but it also allows for misdemeanors to be scored as additional offenses and prior record, § 921.0024(1)(a); see Fudge v. State, 791 So. 2d 1186, 1187 (Fla. 5th DCA 2001) ("[M]isdemeanors cannot be scored as primary offenses at conviction.").

[6]Tripp v. State, 622 So. 2d 941 (Fla. 1993).

between the CPC and its predecessor, the sentencing guidelines. The court recognized that "a single sentencing range is not established under the CPC as occurred under the prior guidelines." Id. at 985. "[U]nder the CPC, together the individual offenses only establish the minimum sentence that may be imposed; a single maximum sentence is not established—each individual offense has its own maximum sentence, namely the statutory maximum for that offense." Id. "The maximum sentence for each offense is determined solely by the statutory maximum for the individual offense[]." Id. That is, "the CPC has no ceiling other than the statutory maximum punishment . . . and permits a consecutive sentence for each offense." Id. at 986 (Pariente, C.J., concurring).

Thus, the supreme court seems to have determined that the number of permissible sentencing ranges at a sentencing hearing is determined by the number of convictions pending for sentencing. But Moore does not address how to apply the directive to impose the LPS when it exceeds the statutory maximum sentence. Nor does it address whether the LPS is an individual minimum sentence or whether the "statutory maximum" referenced in the range is different than the "statutory maximum sentence" in the directive of section 921.0024(2).

IV.     Analysis

Although courts have applied the language of section 921.0024(2) and the holdings of Butler and Moore, they have often done so inconsistently, with conflicting application and results, and without analysis. Compare Holland v. State, 953 So. 2d 19, 20 (Fla. 2d DCA 2007) ("[T]he points on the scoresheet totaled 1090 points and the [LPS] was 796.5 months' or 66.3 years' incarceration for this collection of second-degree felonies." (emphasis added)), Charles v. State, 204 So. 3d 63, 65, 65 n.3 (Fla.

4th DCA 2016) (noting that the offender's LPS was 79.8 months (6.65 years) yet he was sentenced to five years for the possession of Ecstasy/MDMA conviction), Robinson v. State, 160 So. 3d 521, 522 (Fla. 5th DCA 2015) (reversing denial of postconviction motion in part and stating that Robinson pleaded to three third-degree felonies in exchange for "a sentence equal to the [LPS] calculated on the scoresheet" (emphasis added)), and Cliatt v. State, 970 So. 2d 902, 902 (Fla. 5th DCA 2007) (stating that offender's LPS was 53.25 years in prison, he was sentenced to "a composite sentence" of 70 years followed by life probation, and that "[b]ecause the trial court did not exercise its discretion to impose life imprisonment, it could not impose a sentence in which the total of the incarcerative term and the probationary term exceeded the maximum sentence for a particular offense" (citing Carter v. State, 920 So. 2d 735, 736 (Fla. 5th DCA 2006))), with Moss v. State, 925 So. 2d 1131, 1133 (Fla. 2d DCA 2006) ("[T]he sentences imposed by the trial court in this case exceeded those authorized by the [CPC]."), Castillo v. State, 244 So. 3d 1098, 1109-1100, 1105 (Fla. 4th DCA 2018) (reversing with instructions that the trial court "impose the correct sentence required by the [CPC] of 237.45 months, or 19.78 years," on a second-degree felony conviction which, given the crimes and the arguments raised, must have been an additional offense), Cunningham v. State, 22 So. 3d 127, 129 (Fla. 4th DCA 2009) (holding that sentences in excess of the statutory maximum for additional offenses at sentencing under the CPC were legal without reference to the LPS), Wheeler v. State, 864 So. 2d 492, 492-93 (Fla. 5th DCA 2004) (reversing offender's sentences on five counts of burglary where the sentences exceeded the statutory maximum of fifteen years for each count and stating that "[t]he [LPS] for each of the burglaries was 165.6 months, or 13.80

- 10 -

years" (emphasis added)), and Demar v. State, 840 So. 2d 381, 382 (Fla. 1st DCA 2003) (reviewing two convictions and sentences, reversing the sentence on third-degree felony child abuse, and stating that "the maximum sentence the trial court could have imposed in the instant case is [the LPS of] 64.5 months" without distinguishing between the two convictions).[7]  The inconsistencies may be strictly the result of courts addressing only the discreet issues presented and the terms or portions of section 921.0024(2) about which they were asked.  Nonetheless, the results of these cases and their applications of section 921.0024(2) are often conflicting and, at a minimum, imprecise.

Given the statutory language and Moore and Butler, we know that the LPS is a minimum sentence; that it must be imposed where it exceeds the statutory maximum sentence, absent a basis for departure; that the maximum sentence for each offense is the statutory maximum for the individual offense; and that where it exceeds the statutory maximum sentence, the LPS becomes the maximum sentence which may be imposed.  What has not been analyzed, except in two concurrences and one dissent, is how to interpret and apply the language of section 921.0024(2) where there are multiple convictions at sentencing.  See Colon v. State, 199 So. 3d 960, 964 (Fla. 4th DCA 2016) (Warner, J., concurring specially); Dennard v. State, 157 So. 3d 1055, 1056-

---

[7]Additionally, some cases have referenced the maximum sentence in connection with the LPS.  See, e.g., Fernandez v. State, 199 So. 3d 500, 503 (Fla. 2d DCA 2016) (stating that although the LPS would have been reduced under a corrected scoresheet, the maximum sentence remained the same collective maximum); State v. Hall, 47 So. 3d 361, 364 n.4 (Fla. 2d DCA 2010) ("Although it is true that [the LPS] exceeds the statutory maximum sentence for a single grand theft, it does not exceed Ms. Hall's maximum sentence under her scoresheet, which is ten years' imprisonment.").

57 (Fla. 4th DCA 2014) (Conner, J., concurring specially); Id. at 1057-61 (Warner, J., dissenting). And although it has been stated that section 921.0024(2) "is unclear on how a sentence should be imposed in cases where there are multiple offenses for sentencing and the sentencing points result in a[n] [LPS] above the statutory maximum," we disagree. See Dennard, 157 So. 3d at 1056-57 (Conner, J., concurring specially) (discussing two potential interpretations of section 921.0024(2) as requiring imposition of the LPS "for each offense" for which it exceeds that offense's statutory maximum or as requiring imposition of the LPS where it exceeds the primary offense's statutory maximum); see also Colon, 199 So. 3d at 964 (Warner, J., concurring specially) (discussing application of section 921.0024(2)'s directive when the statutory maximum of the primary offense exceeds the LPS but the additional offense statutory maximum is less than the LPS); Dennard, 157 So. 3d at 1059-61 (Warner, J., dissenting) (interpreting Butler and the language of section 921.0024(2) as requiring the court to sentence the offender to at least the LPS on the primary offense where the primary offense's statutory maximum exceeds the LPS but prohibiting the court from sentencing the offender to the LPS on an additional offense where the LPS exceeds the statutory maximum for the additional offense and determining that in light of Moore, the LPS "is the collective total minimum sentence for all offenses" and "not the sentence which must be applied to each offense at sentencing" such that section 921.0024(2)'s directive "appl[ies] to the collective total statutory maximum of the individual sentences").

Based on the language of section 921.0024(2) and bounded by the language of Butler and Moore, we conclude that the LPS is an individual minimum sentence which applies to each felony at sentencing for which the LPS exceeds that

- 12 -

felony's statutory maximum sentence, regardless of whether the felony is the primary or an additional offense.[8]  See § 1.01(1), Fla. Stat. (2005) ("In construing [Florida] statutes and each and every word, phrase, or part hereof . . . [t]he singular includes the plural and vice versa."); Fla. R. Crim. P. 3.701(d)(12) ("A sentence must be imposed for each offense."); Parks v. State, 765 So. 2d 35, 35 (Fla. 2000) ("[G]eneral sentences have been prohibited in Florida since Dorfman v. State, 351 So. 2d 954 (Fla. 1977)." (quoting Inclima v. State, 570 So. 2d 1034, 1034 (Fla. 5th DCA 1990))).  The alternative interpretation, that the LPS is a collective minimum sentence, while seemingly reasonable, is not premised on the statutory language or clearly reconcilable with Butler and Moore.

Although factually distinguishable, Butler provides that when the LPS exceeds the statutory maximum sentence the LPS becomes "the maximum sentence which the trial judge can impose."  838 So. 2d at 556.  We acknowledge that a strict application of that holding in multiple-conviction-at-sentencing cases would mean that when it is the maximum sentence which must be imposed, the LPS is a collective sentence.  However, Butler has not been applied by any court in such a way, and we do not believe that Butler requires such an application.  See Dennard, 157 So. 3d at 1058 (Warner, J., dissenting).  As noted previously, because Butler appears to have involved misdemeanor additional offenses, to which the CPC does not apply and for which

_____

[8]We recognize that our conclusion may result in the State successfully appealing additional-offense sentences which are individually less than the LPS and for which a basis for departure has not been established.  See § 921.002(1)(h) ("A sentence may be appealed on the basis that it departs from the [CPC] only if the sentence is below the [LPS] . . . ."), § 924.07(1)(i), Fla. Stat. (2017) ("The State may appeal from . . . [a] sentence imposed below the [LPS] established by the [CPC] under chapter 921.").

consecutive sentencing would be impossible,[9] Butler's holding in this context is questionable.

Likewise, while Moore did not address the directive of section 921.0024(2) requiring imposition of the LPS when it exceeds the statutory maximum where multiple convictions are before the court for sentencing, the court's holding that once the minimum sentence is established the offenses are no longer interrelated is important to our conclusion. Moore clearly holds that under the CPC there is not a single sentencing range; rather, each offense has its own statutory maximum sentence such that the range may differ for each offense. But where the LPS exceeds the offense's statutory maximum sentence, there is no range; the LPS must be imposed. See Butler, 838 So. 2d at 556; Dennard, 157 So. 3d at 1057 (Conner, J., concurring specially) (highlighting the use of singular terms, i.e., statutory maximum rather than statutory maximums, as well as the absence of limiting or clarifying language, i.e., restricting mandatory imposition of the LPS to circumstances where the LPS exceeds the statutory maximum for the primary and any additional offenses on the scoresheet). But cf. § 921.002(1)(h) ("A sentence may be appealed on the basis that it departs from the [CPC] only if the sentence is below the [LPS] or as enumerated in s. 924.06(1)." (emphasis added)), § 924.06(1)(e), Fla. Stat. (2005) ("A defendant may appeal from . . . [a] sentence imposed under [the CPC] which exceeds the statutory maximum penalty provided in s. 775.082

_____

[9]See § 775.08(2); Kittles v. State, 31 So. 3d 283, 284-85 (Fla. 4th DCA 2010); see also Bautista v. State, 128 So. 3d 117, 118 (Fla. 4th DCA 2013) ("The defendant's first degree misdemeanor conviction was not subject to the [CPC]." (citing § 921.002, Fla. Stat. (2004))).

for an offense at conviction, or the <u>consecutive statutory maximums</u> for offenses at conviction, unless otherwise provided by law." (emphasis added)).

Although this court has not previously analyzed the statutory language or how it is to be applied, it has cited <u>Butler</u> and section 921.0024(2) and remanded for resentencing where the sentences were illegal, exceeding both the LPS and the statutory maximums. <u>See</u> <u>Perkins v. State</u>, 123 So. 3d 678, 678 (Fla. 2d DCA 2013); <u>Thompson v. State</u>, 79 So. 3d 208, 208 (Fla. 2d DCA 2012); <u>Horne v. State</u>, 6 So. 3d 99, 101 (Fla. 2d DCA 2009), <u>clarified by</u> <u>Horne v. State</u>, 35 So. 3d 40 (Fla. 2d DCA 2010). Our conclusion that the LPS is an individual minimum sentence is consistent with these cases. <u>See also</u> <u>Martinez v. State</u>, 216 So. 3d 734, 738 (Fla. 4th DCA 2017) (en banc) (addressing a postconviction claim of manifest injustice and stating that "[u]nder the CPC, given the total sentencing points, the trial court was required, absent a valid reason for departure, to sentence the defendant to the [LPS] for <u>each</u> crime" and that "[o]nly the State's agreement to cap [the offender's] sentence . . . enabled the trial court to depart from imposing the [LPS] for both counts" (emphasis added) (citing § 921.0024(2), Fla. Stat. (2007)));[10] <u>Busbee v. State</u>, 187 So. 3d 1266, 1268-69 (Fla. 1st DCA 2016) (concluding, in part, that the LPS was required to be imposed on each of

_____

[10]Martinez was convicted of two counts of DUI manslaughter, both second-degree felonies; one count of DUI with serious bodily injury, a third-degree felony; and one count of DUI with damage to property or person, a first-degree misdemeanor. 216 So. 3d at 735. Although the <u>Martinez</u> opinion states that the trial court was required to impose the LPS "for each crime" absent a basis for departure, the opinion does not address the third-degree felony conviction; it states only that the two counts of DUI manslaughter require imposition of the LPS. There is no explanation for why the LPS would apply to those felonies, one of which was necessarily the primary offense and the other an additional offense, but not to the DUI with serious bodily injury count, also a felony additional offense.

two third-degree felony convictions, neither of which would have been the primary offense where a second-degree felony conviction was also pending before the court for sentencing, stating "[p]er section 921.0024(2) and Butler, [the LPS] becomes the required sentence" for both third-degree felony convictions not subject to habitual felony offender enhancement).[11]  But see Colon, 199 So. 3d at 964 (Warner, J., concurring specially) ("[I]n this case, as the statutory maximum for [the primary offense] was life, well in excess of the LPS, sentencing appellant to the LPS for the primary offense satisfies the statutory directive of section 921.0024(2).  The sentences for the remaining third degree felonies should not exceed the statutory maximum for each crime."); Dennard, 157 So. 3d at 1060-61 (Warner, J., dissenting) (determining that the directive of section 921.0024(2) can be harmonized with the language from section 921.002(1)(g) that the trial court "may impose a sentence up to and including the statutory maximum for any offense" and courts may impose concurrent or consecutive sentences, directing "consecutive sentencing to achieve an LPS without exceeding the statutory maximum for any one offense"); but cf. Fla. R. Crim. P. 3.992(a) ("The maximum sentence is up to the statutory maximum for the primary and any additional offenses as provided in s. 775.082, F.S., unless the [LPS], exceeds the statutory maximum."); Walsh v. State, 198 So. 3d 783, 785, 788 (Fla. 2d DCA 2016) ("In case 2D14-4735, the trial court sentenced Mr. Walsh to the [LPS] of 18.5 years for count one, 15 years consecutive for count two,

---

[11]The remaining convictions at sentencing were subject to habitual felony offender (HFO) enhancement, Busbee, 187 So. 3d at 1269-71, and therefore not subject to the CPC, § 775.084(4)(h); see Collins, 985 So. 2d at 991.  The opinion does not indicate whether the HFO enhanced convictions were included on the scoresheet used to calculate the LPS.  It indicates only that the court found "no error" in the LPS calculation.  Id. at 1268.

- 16 -

15 years consecutive for count three, and 15 years each for counts four to ten concurrent to counts one to three, for a total of 48.5 years. In case 2D14-4920, the trial court sentenced him to 15 years for each of the seven counts . . . . [T]he sentences imposed on Mr. Walsh are legal." (emphasis added)).

It is evident that the effect of section 921.0024(2)'s directive differs significantly if the LPS is an individual minimum sentence rather than a collective minimum sentence. Would an offender convicted in multiple cases of multiple counts be in a better position for sentencing if he is sentenced on each case individually rather than at one sentencing hearing where all convictions appear on a single scoresheet? Could counsel be deemed ineffective for failing to advise his client of this option and its ramifications? The factors potentially at issue are indeterminable.[12]

---

[12]The myriad of possibilities affecting sentencing under the CPC, both factually and legally, is greater than what we can address here. We have noted some of the nuances potentially applicable to Champagne's case, particularly as to VCC sentencing. We acknowledge that the supreme court has "verified the constitutionality of the CPC," at least as to the issues raised by the offender and considered by the court. See Bryant v. State, 148 So. 3d 1251, 1257 (Fla. 2014) (citing Hall v. State, 823 So. 2d 757, 759 (Fla. 2002)). In Hall, the court held that Apprendi v. New Jersey, 530 U.S. 466 (2000), was inapplicable to Hall's case: first, there was no Apprendi violation "[b]ecause the sentence for each of Hall's offenses did not exceed the statutory maximum"—his penalties were not increased beyond the statutory maximum—and therefore, there was no requirement for a jury finding; and second, "in [Hall's] case" because the LPS was below the statutory maximum for the third-degree felony offenses, the CPC did not create " 'wandering' or 'floating' statutory maximums" in violation of the due process principles expressed in Apprendi. Hall, 823 So. 2d at 764-65. We are not faced with the question of whether an Apprendi violation exists if the offender is sentenced on multiple convictions to an LPS above the individual statutory maximums where only one (or only some) of the offenses were assessed victim injury points by the jury or juries. See Smallridge v. State, 904 So. 2d 601, 606 (Fla. 1st DCA 2005); see generally Plott, 148 So. 3d at 95 ("[W]e hold that upward departure sentences that are unconstitutionally enhanced in violation of Apprendi and Blakely patently fail to comport with constitutional limitations, and consequently, the sentences are illegal under rule 3.800(a)."). Likewise, we are not faced with the possibility of double jeopardy or due process violations where the points assessed on the primary

- 17 -

V.      Conclusion

We affirm the postconviction court's order and conclude that Champagne's

sentence on the false imprisonment conviction is legal.  Recognizing the importance of

the issue, we certify the following question:

> IS THE LOWEST PERMISSIBLE SENTENCE AS DEFINED
> BY AND APPLIED IN SECTION 921.0024(2), FLORIDA
> STATUTES (2017), AN INDIVIDUAL MINIMUM SENTENCE
> AND NOT A COLLECTIVE MINIMUM SENTENCE WHERE
> THERE ARE MULTIPLE CONVICTIONS SUBJECT TO
> SENTENCING ON A SINGLE SCORESHEET?

Affirmed; question certified.

KELLY and LUCAS, JJ., Concur.

---

offense are used to reach the total sentencing points which are then used to calculate
the LPS and the LPS is imposed on each offense at sentencing.  See Hall, 823 So. 2d
at 761-62, 764.